952 So.2d 273 (2006)
James Leslie HENDERSON, Appellant,
v.
Stacey Gordon HENDERSON, Appellee.
No. 2004-CA-01277-COA.
Court of Appeals of Mississippi.
November 21, 2006.
*275 John Robert White, Ridgeland, attorney for appellant.
William R. Wright, W. Benton Gregg, Jackson, attorneys for appellee.
EN BANC.

ON MOTION FOR REHEARING
MYERS, P.J., for the Court.
¶ 1. The motion for rehearing is denied, and the original opinion is withdrawn and the present opinion is substituted in lieu thereof. On May 24, 2004, the Madison County Chancery Court refused to grant Jim Henderson and Stacey Henderson a divorce, awarded Stacey sole legal and physical custody of their two minor children, Luke Henderson and Cash Henderson, subject to Jim's visitation rights and ordered Jim to pay Stacey $2,000 per month in child support and $1,000 per month in spousal support along with her attorney fees accrued during a contempt hearing as a result of him not following a previous order entered by the court. Finding no error, we affirm the ruling of the chancery court.

FACTS
¶ 2. Jim and Stacey were married on April 26, 2000. This was the second marriage for Jim and third for Stacey. Jim was a resident at the University of Mississippi Medical Center in Jackson and Stacey was a nurse anesthetist. Stacey had one son, Tucker, by a previous marriage and Jim had no children. Shortly after the two were married, Jim accepted a fellowship in Birmingham, Alabama. Stacey stayed behind in Jackson because she was pregnant with their first son, Luke, who was born on December 16, 2000. During Jim's fellowship, he traveled to Jackson two to three weekends a month. Jim returned to Jackson in August of 2001. Jim *276 worked as an emergency room physician and Stacey as a nurse anesthetist which allowed them flexible work schedules so that someone was always able to care for Luke. A month before Cash, their second son, was born, Stacey and Jim separated and Stacey filed a complaint for divorce and motion for temporary relief on January 23, 2002. These proceedings were postponed due to the birth of Cash and their attempted reconciliation.
¶ 3. On January 2, 2003, Stacey filed a motion for an emergency temporary hearing and as a result an agreed order of temporary custody was entered on January 3, 2003. That order provided for shared custody and each party was forbidden to consume alcohol while driving a vehicle with the children in it. The chancellor entered another temporary order on February 6, 2003, which awarded both Stacey and Jim joint legal and physical custody of the children. During this time period there were numerous accusations by both parties of alcohol and drug use. After an altercation which resulted in assault charges being filed during an exchange of the boys, Stacey filed a motion for an emergency temporary hearing on March 31, 2003. As a result Jim filed his response along with a counterclaim which resulted in the chancellor, on June 13, 2003, entering an agreed temporary order granting Jim legal and physical custody of the boys but both parties retained visitation.
¶ 4. Other temporary motions were filed which resulted in Jim retaining custody which was granted to him on June 13, 2003, until the case went to trial. On November 14, 2003, Stacey filed an amended complaint for divorce adding grounds of uncondoned adultery and constructive desertion.
¶ 5. The case went to trial on January 20, 22 and February 2, 2004. Jim hired four different attorneys during this domestic dispute; therefore, Jim moved for three different continuances which the chancellor denied. The chancellor ruled that Stacey failed to prove any of her grounds for divorce, so that portion of the case was dismissed. After hearing testimony from both parents, the guardian ad litem and other witnesses, the chancellor granted legal and physical custody of both children to Stacey with standard visitation given to Jim. The chancellor also ordered Jim to pay child support in the amount of $2,000 monthly and temporary spousal support in the amount of $1,000. The chancellor held Jim in contempt for past due alimony in the amount of $7,000 and for allowing someone of the opposite sex to spend the night when he had the children in violation of a court order. As a result of this contempt, Jim was ordered to pay Stacey's attorney fees for the contempt proceedings.
¶ 6. Aggrieved by the chancery court's ruling, Jim appeals to this Court raising the following nine issues:
I. THE CHANCELLOR ABUSED HIS DISCRETION BY OVERRULING JIM'S THREE MOTIONS FOR CONTINUANCE.
II. THE CHANCELLOR ERRED IN REFUSING TO GRANT JIM'S ORE TENUS MOTION FOR RECUSAL.
III. THE CHANCELLOR ERRONEOUSLY APPLIED THE ALBRIGHT FACTORS AND SHOULD HAVE AWARDED LEGAL AND PHYSICAL CUSTODY OF THE CHILDREN TO JIM.
IV. THE CHANCELLOR'S AWARD OF "STANDARD" VISITATION TO JIM FAILS TO PROVIDE HIM WITH ADEQUATE VISITATION WITH HIS CHILDREN.

*277 V. THE CHILD SUPPORT AWARDED BY THE CHANCELLOR IS EXCESSIVE AND IS NOT BASED ON A PROPER FINDING BY THE COURT.
VI. THE CHANCELLOR ABUSED HIS DISCRETION IN OVERRULING JIM'S MOTION TO MODIFY TEMPORARY SPOUSAL SUPPORT AND IN GRANTING STACEY'S MOTIONS FOR CONTEMPT.
VII. THE CHANCELLOR ABUSED HIS DISCRETION IN FINDING JIM IN CONTEMPT OF COURT FOR ALLOWING SAMANTHA McDUFFY TO SPEND THE NIGHT AT HIS HOME.
VIII. THE CHANCELLOR ABUSED HIS DISCRETION BY ORDERING HIM TO PAY A PORTION OF STACEY'S ATTORNEY FEES.
IX. THE CUMULATIVE EFFECT OF THE CHANCELLOR'S ERRORS WARRANTS REVERSAL OF THE CASE.

DISCUSSION
I. THE CHANCELLOR ABUSED HIS DISCRETION BY OVERRULING JIM'S THREE MOTIONS FOR CONTINUANCE.
¶ 7. Jim argues that he was prejudiced as a result of the chancellor denying his three motions for continuance. He claims that he lacked the opportunity to prepare witnesses; however, he does not show how this alleged lack of preparation prejudiced his case. The grant or denial of a continuance is within the discretion of the trial court. McDonald v. McDonald, 850 So.2d 1182, 1188(¶ 20) (Miss.Ct.App. 2002). The only time this Court will overturn the denial for a continuance is when manifest injustice has occurred. Hatcher v. Fleeman, 617 So.2d 634, 639 (Miss.1993). Prejudice must result from the denial in order to have that decision reversed. Dew v. Langford, 666 So.2d 739, 746 (Miss. 1995). This case had been pending for over a year giving Jim ample time to prepare witnesses, and Jim changed attorneys numerous times. See Weeks v. Weeks, 832 So.2d 583, 585-86(¶ 9) (Miss.Ct.App.2002).
¶ 8. Jim states that he was entitled to a continuance after Paul Davey, a counselor who evaluated the children and both parents, changed his recommendations regarding the custody of the children after further observation of the children. However, the chancellor struck this "Second Addendum to Evaluation Report" which was prepared by Davey; therefore, no continuance was needed. Jim also moved for a continuance so that he could compel testimony of the expert who had performed DNA testing done on a piece of hair which he allegedly got from Stacey's hairbrush in order to prove her cocaine use. The chancellor did not err in denying this request because it was undisputed that Jim failed to timely disclose the identity of the expert witness who purportedly would have testified that the hair sample was probative of Stacey using cocaine. Therefore, we find that the chancellor did not err in denying Jim's motions for continuance.
II. THE CHANCELLOR ERRED IN REFUSING TO GRANT JIM'S ORE TENUS MOTION FOR RECUSAL.
¶ 9. Jim alleges that he was entitled to an ore tenus motion for recusal because the chancellor would not allow the results of the DNA testing into evidence. As stated above, Jim had a strand of hair which allegedly came from Stacey's hairbrush tested for cocaine use. While the chancellor did state that he questioned whether Jim was capable of tampering with evidence, and there was no chain of custody showing that the sample did indeed *278 come from Stacey, it is clear that his ruling in disallowing the evidence was based upon Jim's failure to comply with discovery.
¶ 10. It is presumed that a judge who is sworn to administer justice is qualified, impartial and unbiased and when the judge is not disqualified under constitutional or statutory provisions the judge is to decide the propriety of her sitting and that decision is subject to review only in a case of manifest abuse of discretion. Steed v. State, 752 So.2d 1056, 1061(¶ 14) (Miss. Ct.App.1999). However, the chancellor's rulings do not preference either party. The chancellor may have ruled in favor of Stacey in granting her custody of the children, but the chancellor denied Stacey's petition for divorce stating that she had not proved her grounds. Therefore, we find no abuse of discretion.
III. THE CHANCELLOR ERRONEOUSLY APPLIED THE ALBRIGHT FACTORS AND SHOULD HAVE AWARDED LEGAL AND PHYSICAL CUSTODY OF THE CHILDREN TO JIM.
¶ 11. Jim asserts that the chancellor did not analyze the Albright factors correctly in determining the best interest of the children. The chancellor ruled that all of the factors other than the age, health and sex of the children and the continuity of care prior to the separation, favored neither parent. The chancellor found that the previous three factors favored Stacey, and Jim claims that this ruling was erroneous.
¶ 12. This Court's standard of review in domestic relations cases is established and clear. Child custody matters fall within the sound discretion of the chancellor. Sturgis v. Sturgis, 792 So.2d 1020, 1023(¶ 12) (Miss.Ct.App.2001). Therefore, a chancellor's ruling will not be disturbed by this Court unless we find the trial court was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Cooper v. Ingram, 814 So.2d 166, 167(¶ 2) (Miss.Ct.App.2002).
¶ 13. The Mississippi Code Annotated § 93-5-23 (Rev.2004) gives the court authorization to make all orders regarding the children during a divorce case. Mississippi is guided by the best interest of the child regarding custody matters. Miss.Code Ann. § 93-5-24 (Rev.2004). Jim argues that the age of the children is not the deciding factor for custody. Jim correctly states that the best interest of the child is the most important concern in determining custody of the children. Dickerson v. Dickerson, 245 Miss. 370, 374-75, 148 So.2d 510, 512 (1963). Therefore, the Mississippi Supreme Court has set out certain factors for the chancellor to consider in determining the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The chancellor went through an analysis of these factors, and we cannot rule that he erroneously applied them in determining the best interests of Luke and Cash. The chancellor listened to testimony of witnesses including the recommendation of the guardian ad litem. The chancellor is in the best position to evaluate all factors relating to the best interest of the child; therefore, it is appropriate to state that our review is limited. Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993). We find that the chancellor committed no error in analyzing these factors and awarding custody of the children to Stacey.
IV. THE CHANCELLOR'S AWARD OF "STANDARD" VISITATION TO JIM FAILS TO PROVIDE HIM WITH ADEQUATE VISITATION WITH HIS CHILDREN
¶ 14. Jim argues that, since the guardian ad litem recommended Jim *279 should have liberal visitation and the chancellor agreed with this recommendation, the chancellor erred in only giving Jim standard visitation with his children. Jim accurately states that the chancellor does not have to follow the recommendations of the guardian ad litem, but he states that the chancellor abused his discretion in employing standard visitation in this case. The same standard as stated above is applied for visitation as for custody. Where a chancellor has made a factual finding on the matter of visitation, this Court will not disturb those findings unless there is no credible evidence, he has committed manifest error or he has applied an erroneous legal standard. Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997). The chancellor's paramount concern remains the best interest of the child. Harrington v. Harrington, 648 So.2d 543, 545 (Miss. 1994).
¶ 15. The Mississippi Supreme Court has said that shifting children constantly from one parent to another is not in the best interest of the child. Gardner v. Pettit, 192 So.2d 696, 697 (Miss.1966). The chancellor even explained in his ruling that by allowing liberal visitation as the guardian ad litem recommended would cause this order to be modified once the children started school and this process would begin again. The chancellor stated that this would be detrimental to the best interest of the two children. Shifting custody only accommodates the parent and is not in the best interest of the child. Brocato v. Walker, 220 So.2d 340, 343 (Miss.1969). We, therefore, find this issue to be without merit.
V. THE CHILD SUPPORT AWARDED BY THE CHANCELLOR IS EXCESSIVE AND IS NOT BASED ON A PROPER FINDING BY THE COURT.
¶ 16. The chancellor ordered Jim to pay Stacey child support in the amount of $2,000 per month. Jim claims that this award exceeds the child support guidelines. It is within the chancellor's discretion to award child support, and this Court will not reverse that award unless the chancellor was manifestly wrong in the findings of fact or manifestly abused his discretion. Chesney v. Chesney, 910 So.2d 1057, 1060(¶ 5) (Miss.2005). The chancellors awarding of child support is actually an exercise of fact finding; therefore, this Court's review is significantly restrained. Clausel v. Clausel, 714 So.2d 265, 267(¶ 6) (Miss.1998).
¶ 17. The guidelines of awarding child support are set out in § 43-19-103 of the Mississippi Code Annotated. The guidelines for two children is twenty percent of the adjusted gross income; however, if the income is more than $50,000 the court shall make a written finding in the record as to whether this amount is reasonable. Miss. Code Ann. § 43-19-101(Rev.2004).
¶ 18. The chancellor deducted the amount Jim pays for medical malpractice insurance and determined that his monthly adjusted gross income is $9,370. Twenty percent of that amount is $1,874, and the chancellor ordered Jim to pay $2,000. The chancellor pointed out that Jim is a doctor; therefore, he has the ability to earn more income but he voluntarily chooses not to. See Hensarling v. Hensarling, 824 So.2d 583, 588(¶ 14) (Miss.2002). After reviewing the record it is obvious that Jim is capable of supporting himself and paying the amount of child support ordered by the chancellor. See Smith v. Smith, 614 So.2d 394, 396 (Miss.1993). Even though we would have benefitted from more detailed information regarding the reasonableness of child support, we find that the chancellor did not abuse his discretion or commit manifest error.
*280 VI. THE CHANCELLOR ABUSED HIS DISCRETION IN OVERRULING JIM'S MOTION TO MODIFY TEMPORARY SPOUSAL SUPPORT AND IN GRANTING STACEY'S MOTIONS FOR CONTEMPT.
¶ 19. The chancellor ordered Jim to pay temporary spousal support of $1,000 per month on February 6, 2003, as well as again on June 13, 2003. Jim refused to pay this support for seven months; therefore, the court held him in contempt for not paying spousal support. Jim argues that Stacey has returned to full-time employment; therefore, he should not be required to pay spousal support.
¶ 20. This Court remains limited in the review of the chancellor's award of temporary spousal support. Holley v. Holley, 892 So.2d 183, 184(¶ 6) (Miss.2004). We find no error in the chancellor awarding temporary spousal support. The chancellor stated in the record that Jim has the financial ability to make these payments, and he is held in contempt for not paying this alimony for seven months. Stacey is a nurse and Jim is a doctor. The chancellor reviewed the financial situation of both parties and after doing so awarded temporary alimony. See Jordan v. Jordan, 510 So.2d 131, 133 (Miss.1987).
¶ 21. Jim refused to follow a court order for seven months; therefore, the chancellor held him in contempt. This Court will not reverse a finding of contempt unless the lower court committed manifest error. Illinois Cent. R. Co. v. Winters, 815 So.2d 1168, 1180(¶ 45) (Miss. 2004). We find no error in the chancellor holding Jim in contempt for not following this temporary order.
VII. THE CHANCELLOR ABUSED HIS DISCRETION IN FINDING JIM IN CONTEMPT OF COURT FOR ALLOWING SAMANTHA McDUFFY TO SPEND THE NIGHT AT HIS HOME.
¶ 22. Jim argues that the court erred in holding him in contempt for allowing Samantha McDuffy to spend the night in his home. The lower court entered a temporary order on February 6, 2004, providing that neither Jim nor Stacey should have members of the opposite sex, not related to them stay overnight while the children are present. Jim again blatantly disregarded a court order; therefore, it was not error for the chancellor to hold him in contempt.
VIII. THE CHANCELLOR ABUSED HIS DISCRETION BY ORDERING HIM TO PAY A PORTION OF STACEY'S ATTORNEY FEES.
¶ 23. Jim was ordered by the court to pay $2,500 of Stacey's attorney fees in order to reimburse her for the contempt proceedings. Jim argues that he should not have been held in contempt; therefore, he should not have to pay Stacey's attorney fees. When one party is held in contempt for violating a court order, attorney's fees should be awarded to the party that has been forced to see the court's enforcement of its own judgment. Elliott v. Rogers, 775 So.2d 1285, 1290(¶ 25) (Miss.Ct.App.2000). Had Jim not failed to pay this alimony in accordance with the court order, Stacey would not have incurred these expenses.
IX. THE CUMULATIVE EFFECT OF THE CHANCELLOR'S ERRORS WARRANTS REVERSAL OF THE CASE.
¶ 24. Jim asserts that all the above mentioned errors made by the chancellor warrants reversal in this case. However, first he must prove that multiple errors did occur. Sheffield v. State, 844 So.2d 519, 525(¶ 15) (Miss.Ct.App.2003). We have declined to find error; therefore, *281 Jim's cumulative claim is without merit. Id.
¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, AND ROBERTS, JJ., CONCUR.