MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. Russell Rose Jr. appeals the Rankin County Chancery Court’s modification of a Louisiana order granting his former mother-in-law, Debbie Upshaw, extensive visitation with her granddaughter, Grace Caroline Rose (Caroline). The original visitation order was the result of a compromise in a heated battle for Caroline’s custody between Rose and Upshaw following the death of Upshaw’s daughter.
 

 ¶ 2. After moving to Mississippi with Caroline, Rose registered the Louisiana order in the Rankin County Chancery Court. Upshaw sought to hold Rose in contempt for interference with her visitation with Caroline. Rose responded with a request that Upshaw’s visitation be severely restricted. The chancellor found a continued relationship with her mother’s family to be in Caroline’s best interest. Instead of limiting Upshaw’s visitation, the chancellor modified the visitation schedule around Caroline’s school schedule.
 

 ¶ 3. Oúr review is limited to the modification only. The original decision to grant Upshaw extensive visitation is not before
 
 *76
 
 us. That decision was made by the Louisiana court, upon Rose and Upshaw’s agreement, and without any appeal. Finding Mississippi obtained jurisdiction not only to enforce but also to modify the Louisiana order, we find no abuse of discretion in the chancellor’s modification. Therefore, we affirm.
 

 BACKGROUND FACTS AND PROCEDURAL HISTORY
 

 ¶ 4. Caroline was ten months old when her mother, Dawn, passed away in June 2006. A legal battle immediately ensued between Dawn’s husband, Rose, and mother, Upshaw, over custody of Caroline. All parties lived in Louisiana at the time. Based on Rose and Upshaw’s agreement, the Louisiana court granted Rose sole custody and permitted him to relocate with Caroline to Mississippi. But it awarded Upshaw five consecutive days per month (sixty days per year) of visitation. This Louisiana judgment, entered January 5, 2007, was to remain in effect “until the child reaches school age, or under further order of this court.”
 

 ¶ 5. On October 18, 2007, Rose registered the Louisiana custody order in the Rankin County Chancery Court, in compliance with Mississippi’s Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Miss.Code Ann. § 93-27-305 (Rev.2004) (procedure for registering child-custody determination from another state). On August 12, 2009, Rose filed a petition in the chancery court to modify the Louisiana visitation order. But before Rose served Upshaw with the petition, Up-shaw filed a motion for contempt. Up-shaw’s August 26, 2009 motion for contempt alleged Rose had denied her the court-ordered visitation. Rose responded with a counterclaim requesting modification of the custody and visitation order. He specifically requested Upshaw’s visitation be restricted to a minimum. Because Caroline was now in preschool, Rose argued Upshaw’s visitation disrupted Caroline’s education. He also complained Up-shaw (1) did not heed instructions about Caroline’s special diet, (2) obsessed over Dawn’s death in front of Caroline, regularly taking her to visit Dawn’s grave, and (3) refused to call her granddaughter “Caroline” as Rose did, instead calling her “Grace.”
 

 ¶ 6. On February 26, 2010, the chancery court issued an order finding Rose in contempt and modifying Upshaw’s visitation. Instead of Upshaw having Caroline five consecutive days during the first week of the month, the chancery court awarded her six weeks’ visitation in the summer and alternating holidays, for a total of approximately seventy days per year. He addressed Rose’s other concerns through specific instructions in the modification order.
 

 ¶ 7. Rose timely appealed. He challenges the modification only. He does not contest the contempt finding.
 

 LAW AND DISCUSSION
 

 ¶ 8. Rose claims the chancellor erred by granting Upshaw relief she did not request and granting grandparent visitation rights commensurate with the rights of a parent, in violation of his due-process rights and contrary to the Louisiana order.
 

 ¶ 9. We must begin by emphasizing the chancellor did not
 
 grant
 
 Upshaw visitation. The Louisiana court did. And it did so upon an agreed order. This order granted Upshaw five consecutive days per month of visitation with Caroline. Rose never appealed this order claiming it violated his due-process rights or Louisiana law. Instead, he asked Mississippi to give the Louisiana order full faith and credit by registering the order in the Rankin Coun
 
 *77
 
 ty Chancery Court.
 
 See
 
 U.S. Const, art. IV, § 1 (full faith and credit clause);
 
 Reeves Royalty Co. v. ANB Pump Truck Serv.,
 
 513 So.2d 595, 598 (Miss.1987) (discussing constitutional requirement Mississippi gives full faith and credit to other states’ judgments).
 
 See also
 
 Miss.Code Ann. §§ 93-27-805 (registration of another state’s child-custody determination) and 93-27-306(1) (Rev.2004) (enforcement of another state’s child-custody order). Therefore, just as the original grant of extensive visitation to Upshaw was not up for collateral attack before the chancellor, it is not before us on review. Instead, we are solely concerned with the chancellor’s decision to
 
 modify
 
 the Louisiana visitation order.
 

 I. Procedure
 

 ¶ 10. As a preliminary matter, we find no merit in Rose’s argument that Up-shaw could not benefit from the modification because she did not request such relief. Rose cites the general principle that no relief can be given that is outside the scope of the pleadings or the proof.
 
 E.g., Barnes v. Barnes,
 
 317 So.2d 387, 388 (Miss.1975) (rev’d on other grounds). But the issue of modification was both pled and proved. Rose raised the issue of modification in his answer and counterclaim to Upshaw’s contempt motion. And both parties presented evidence about how the current visitation schedule was not working.
 
 See
 
 M.R.C.P. 15(b) (“When issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.”). Thus, the issue of modification was squarely before the chancellor.
 

 ¶ 11. Rose essentially argues, since he was the one to plead modification, the chancellor could only modify the visitation order to meet Rose’s specific request that Upshaw’s visitation be restricted. But, procedurally, the chancellor was not limited to granting all-or-nothing relief— either enforcement of the unmodified Louisiana order or restriction of Upshaw’s visitation rights. “On visitation issues, as with other issues concerning children, the chancery court enjoys a large amount of discretion in making its determination of what is in the best interest of the child.”
 
 Haddon v. Haddon,
 
 806 So.2d 1017, 1020(12) (Miss.2000) (citing
 
 Harrell v. Harrell,
 
 231 So.2d 793, 797 (Miss.1970)).
 

 ¶ 12. The chancellor determined it was in Caroline’s best interest to continue a relationship with her deceased mother’s family. But both parties presented the chancellor with evidence the current visitation schedule was not working. Further, the order itself acknowledged the order would have to be modified when Caroline reached school age. Thus, the chancellor was well within his discretion to grant relief in the form of a modified schedule that both permitted Upshaw’s continued visitation and Rose’s control over Caroline’s education.
 

 II. Subject-Matter Jurisdiction
 

 ¶ 13. We note neither party challenges Mississippi’s jurisdiction to modify the Louisiana order. However, because subject-matter jurisdiction cannot be waived, we address how Mississippi obtained jurisdiction to modify the Louisiana order.
 

 ¶ 14. Both Mississippi and Louisiana have adopted the UCCJEA. Miss.Code Ann. §§ 93-27-101 to -402 (Rev.2004 & Supp.2010); La.Rev.Stat. Ann. §§ 13: 1801 to 1842 (Supp.2011). With the Louisiana order properly registered in Mississippi, Mississippi courts gained jurisdiction to
 
 enforce
 
 the Louisiana order. Miss.Code Ann. § 93-27-305, -306(1). But a Mississippi court could not
 
 modify
 
 the order
 
 *78
 
 unless (1) the Mississippi court had jurisdiction to make an initial child-custody determination and (2) either (a) Louisiana determined that it no longer had exclusive jurisdiction or that Mississippi would be the more convenient forum or (b) a Mississippi court determined “neither the child, the child’s parents, nor any person acting as a parent presently does not reside” in Louisiana. Miss.Code Ann. §§ 93-27-203(b) (Rev.2004), 93-27-306(2).
 
 See also
 
 Miss.Code Ann. § 93-27-202(l)(b) (Supp. 2010) (giving the issuing state “exclusive, continuing jurisdiction over the determination until: ... (b) A court of this state or a court of another state determines that the child, the child’s parents, and any person acting as a parent currently do not reside in this state.”).
 

 ¶ 15. Because Caroline had been living in Mississippi for over two years prior to the modification, Mississippi was her “home state” at the time of modification.
 
 See
 
 Miss.Code Ann. § 93-27-102(g) (Rev. 2004) (defining “home state” as the state where the child has been living with a parent for at least six months). “Home state” status is the primary way for a state to obtain initial jurisdiction over a child-custody proceeding. Miss.Code Ann. § 93-27-201(l)(a) (Supp.2010). Thus, part one of the exception allowing modification applies. Miss.Code Ann. § 93-27-203.
 

 ¶ 16. The record contains no determination by Louisiana that it no longer had exclusive jurisdiction or that Mississippi would- be the more convenient forum. Miss.Code Ann. § 93-27-203(1). Thus, Mississippi’s jurisdiction depends on whether neither Caroline, nor her father, nor “any person acting as a parent” still lived in Louisiana at the time of modification. Miss.Code Ann. § 93-27-203(b). The Louisiana court granted Rose permission to move to Mississippi with Caroline. And the chancellor specifically determined Rose and Caroline actually moved to Mississippi.
 
 See New Mexico ex rel. Children, Youth, and Families Dep’t v. Donna,
 
 139 N.M. 131, 129 P.3d 167, 171 (2006) (rejecting automatic loss of initial state’s UC-CJEA jurisdiction when parents and children move and instead requiring judicial factual determination of loss of jurisdiction). But the chancellor acknowledged that Upshaw remained in Louisiana. The question becomes: did the chancellor fail to recognize Upshaw as a “person acting as a parent” still residing in the state that had continuing jurisdiction over Caroline’s custody? •
 

 ¶ 17. The UCCJEA defines “person acting as a parent” as:
 

 [A] person, other than a parent, who:
 

 (i) Has physical custody of the child or has had physical custody for a period of six (6) consecutive months, including any temporary absence, within one (1) year immediately before the commencement of a child custody proceeding;
 
 and
 

 (ii) Has been awarded legal custody by a court or claims a right to legal custody under the law of this state.
 

 Miss.Code Ann. § 93-27-102(m) (emphasis added). Although the Louisiana judgment awarded Upshaw extensive visitation, it clearly recognized Rose as the “sole custodial parent.” And although the order permitted Upshaw to take Caroline to the doctor, she had to clear all medical decisions with Rose first. Because Upshaw was not awarded legal custody of Caroline, we find she was not “a person acting as a parent.” Therefore, Mississippi obtained jurisdiction to modify the Louisiana order. Miss.Code Ann. § 93-27-203(b).
 

 III. The Visitation-modification Standard
 

 ¶ 18. As previously stated, the chancellor was not confronted with determining whether to grant Upshaw visita
 
 *79
 
 tion, triggering Mississippi’s multi-factor analysis for grandparent visitation.
 
 See, e.g., Martin v. Coop,
 
 693 So.2d 912, 916 (Miss.1997) (listing ten non-exclusive factors for deciding whether to grant grandparent visitation under Mississippi statute). The chancellor correctly identified the issue before him as the enforcement and potential modification of the Louisiana order.
 

 ¶ 19. Mississippi statute grants the chancellor authority to modify or terminate grandparent visitation “for cause.” Miss.Code Ann. § 93-16-5 (Rev.2004). “Where a chancellor has made a factual finding on the matter of visitation, this Court will not disturb those findings unless there is no credible evidence, he has committed manifest error[,] or he has applied an erroneous legal standard.”
 
 Henderson v. Henderson,
 
 952 So.2d 273, 279 (¶ 14) (Miss.Ct.App.2006) (citing
 
 Bredemeier v. Jackson,
 
 689 So.2d 770, 775 (Miss.1997)). “The chancellor has broad discretion to determine the specific times for visitation.”
 
 H.L.S. v. R.S.R.,
 
 949 So.2d 794, 798 (¶ 9) (Miss.Ct.App.2006) (citing
 
 Haddon,
 
 806 So.2d at 1020 (¶ 12)).
 

 ¶ 20. The chancellor agreed with both parties that the Louisiana visitation schedule was not working. And the Louisiana order had expressly provided that the original visitation schedule would have to be modified when Caroline began school. But the chancellor disagreed with Rose that there was cause to terminate or significantly restrict Upshaw’s visitation. Instead, the chancellor determined it was in Caroline’s best interest to continue a relationship with her deceased mother’s family through Upshaw’s visitation. In modifying Upshaw’s visitation, the chancellor implemented a schedule that allowed Upshaw a similar amount of visitation, while not disrupting Caroline’s education.
 

 ¶ 21. Although the chancellor did not find cause to terminate Upshaw’s visitation based on Rose’s additional concerns over Caroline’s medically restricted diet, her visiting Dawn’s grave, and her being called “Grace,” the chancellor did address Rose’s concerns through specific instructions in the modification order. Rose complains these instructions interfere with his due-process rights as the sole custodial parent, citing
 
 Troxel v. Granville,
 
 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). We find the opposite. The chancellor reiterated that Rose, the sole custodial parent, was “the captain of the ship.” Through his instructions, the chancellor ordered Upshaw to defer to Rose’s paramount right to control Caroline’s physical and emotional environment.
 
 Pruitt v. Payne,
 
 14 So.3d 806, 810 (¶ 8) (Miss.Ct.App.2009) (quoting
 
 Stacy v. Ross,
 
 798 So.2d 1275, 1280 (¶ 23) (Miss.2001)) (“Parents with custody have a paramount right to control the environment, physical, social, and emotional situations, to which their children are exposed.”). Therefore, we find no abuse of discretion in this aspect of the modification order.
 

 ¶ 22. Finding no error in the chancellor’s decisions to modify instead of restrict Upshaw’s visitation, we affirm.
 

 ¶ 23. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR.