## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2022-CA-00363-COA

**PATRICE Y. LATHAM**                                                          **APPELLANT**

**v.**

**TITUS T. LATHAM**                                                              **APPELLEE**

DATE OF JUDGMENT:            02/28/2022
TRIAL JUDGE:                 HON. JOSEPH N. STUDDARD
COURT FROM WHICH APPEALED:   LOWNDES COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      TIMOTHY LAMAR GOWAN
ATTORNEY FOR APPELLEE:       MATTHEW DANIEL WILSON
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 AFFIRMED - 02/28/2023
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., GREENLEE AND SMITH, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.    Patrice Latham appeals from the Lowndes County Chancery Court's judgment of divorce awarding her ex-husband Titus Latham the marital estate and physical custody of their daughter A.L. and ordering Patrice to pay child support.[1]  Patrice claims (1) that the chancellor erred in his *Albright*[2] analysis, and (2) that the chancellor erred by finding that she did not produce a Rule 8.05 financial disclosure.  *See* UCCR 8.05.  Finding no reversible error, we affirm the chancellor's judgment.

### FACTS AND PROCEDURAL HISTORY

_____

[1] Initials are used to protect the identity of the minor child.

[2] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

¶2. Titus and Patrice were married in May 2016 and had one child, A.L. Before the marriage, Patrice had given birth to three children out of wedlock, all with different fathers. After nearly four years of marriage, Titus and Patrice separated in March 2020. Titus filed a complaint for divorce in June 2020, and Patrice filed a counter-claim for divorce approximately two months later. The chancellor entered a temporary order providing temporary relief to the parties. Then Titus and Patrice consented to a divorce based on irreconcilable differences.

¶3. At trial in August 2021, the chancellor decided the issues of child custody, visitation, child support, and equitable distribution of the marital estate. In February 2022, the chancery court entered the chancellor's opinion and final judgment granting Titus and Patrice a divorce based on irreconcilable differences. Additionally, the chancellor awarded Titus primary physical custody of A.L. and granted the parties joint legal custody. The chancellor also established a visitation schedule and ordered Patrice to pay child support. The chancellor noted that Patrice failed to provide the court with a Rule 8.05 financial disclosure, so the only information available to the court was her testimony that she made approximately $4,000 gross from her business. The chancellor reduced Patrice's gross income to an adjusted monthly gross income of $1,600 and ordered Patrice to pay $224 per month in child support.

¶4. Finally, with respect to the distribution of the marital estate, the chancellor found that the double-wide trailer that Titus and Patrice had lived in during the marriage was located on property gifted to the parties by Titus's father. The parties had owned the trailer since

2

2017, and Titus continued to reside in it after their separation. The chancellor noted that Patrice did not make a claim to the real estate but requested the trailer. Additionally, Patrice had obtained a quote in the amount of $5,000 for the cost of moving the trailer to another location. The chancellor reiterated, "Patrice did not submit a [Rule 8.05 financial disclosure] at either the temporary hearing or the trial and did not testify as to the value/equity in the home." Therefore, the only value upon which the chancellor relied was that presented by Titus through his testimony and Rule 8.05 financial disclosure. The chancellor found that the marital residence had a value of $75,080 and that it was encumbered by a debt of $71,097.56. Because the cost of moving the trailer exceeded its equity, the chancellor awarded the marital estate to Titus and ordered Titus to pay Patrice $2,500 to compensate her for her equity in the property.[3]

¶5. Subsequently, Patrice filed a motion to reconsider or alter or amend the judgment or, in the alternative, for a new trial. The chancellor denied the motion, and Patrice appealed.

## STANDARD OF REVIEW

¶6. "This Court's standard of review in domestic-relations matters is extremely limited." *Stuckey v. Waid*, 195 So. 3d 872, 875 (¶13) (Miss. Ct. App. 2016) (quoting *Phillips v. Phillips*, 45 So. 3d 684, 692 (¶23) (Miss. Ct. App. 2010)). "We 'will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused [his] discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal

---

[3] The chancellor also ordered Titus's counsel to prepare a quitclaim deed so that Patrice could transfer her interest in the property to Titus, and the chancellor ordered Titus to remove Patrice from the financing of the residence within six months of the judgment.

3

[standard].'" *Id*. (quoting *Samples v. Davis*, 904 So. 2d 1061, 1064 (¶9) (Miss. 2004)). However, questions of law are reviewed de novo. *Id*.

## DISCUSSION

### I. Child Custody

¶7. Patrice claims that the chancellor erred in his *Albright* analysis, and she claims that she should have been awarded physical custody of A.L.

¶8. It is well established that "[t]he best interest of the child is paramount in any child-custody case." *Roberts v. Eads*, 235 So. 3d 1425, 1428 (¶12) (Miss. Ct. App. 2017) (quoting *Smith v. Smith*, 97 So. 3d 43, 46 (¶8) (Miss. 2012)). In determining a child's best interest, the chancellor considers the following factors:

> (1) the child's age, health, and sex; (2) the parent with the continuity of care prior to the separation; (3) the parent with the best parenting skills and the willingness and capacity to provide primary child care; (4) the parents' employment and the responsibilities of that employment; (5) the parents' physical and mental health and age; (6) the emotional ties of the parent and child; (7) the parents' moral fitness; (8) the child's home, school, and community record; (9) the child's preference at the age sufficient to express a preference by law; (10) the stability of the parents' home environments and employment; and (11) other factors relevant to the parent-child relationship.

*Id*. (citing *Albright*, 437 So. 2d at 1005).

¶9. This Court has noted that "[a]n *Albright* analysis is not a mathematical equation." *Id.* at (¶13) (quoting *Hall v. Hall*, 134 So. 3d 822, 827 (¶19) (Miss. Ct. App. 2014)). We "cannot reweigh the evidence and must defer to the chancellor's factual findings so long as they are supported by substantial evidence." *Id.* Although "all the *Albright* factors are important, . . . the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Id.*

4

¶10.   Patrice asserts that the chancellor erred in his analysis of the following *Albright* factors: the child's age, health, and sex; the parents' moral fitness; and the child's home, school, and community record.  Additionally, Patrice asserts that the chancellor did not give due consideration to the importance of keeping A.L. and her half-siblings together.[4]

### a.   Age, Health, and Sex

¶11.   In his opinion and final judgment, the chancellor found that A.L. was a four-year-old female with no substantial health issues.  Although the chancellor found that the tender-years doctrine should not apply, the chancellor held that A.L.'s age and sex slightly favored Patrice.  In her appellate brief, Patrice acknowledges that this factor—the age, health, and sex of the child—favored her, but she seemingly claims that the chancellor should have given this factor more weight as an "overriding factor."

¶12.   Although Patrice argues that "[t]he Mississippi Supreme Court has said over and over through the years . . . that . . . [a]ge and [s]ex of the [c]hild is an overriding factor when all other *Albright* factors [are] even or near even," she does not provide any authority in support of this argument.  Our rules of appellate procedure require that the appellate brief "contain the contentions of appellant with respect to the issues presented, and the reasons for those

---

[4] The following *Albright* factors, which are not at issue in this appeal, were found to be neutral or did not favor either parent: the parent with the continuity of care prior to the separation; the parent with the best parenting skills and the willingness and capacity to provide primary childcare; the parents' physical and mental health and age; the emotional ties of the parent and child; and the child's preference at the age sufficient to express a preference by law.  Additionally, the chancellor found that the parents' employment and the responsibilities of that employment favored Patrice.  We will briefly address the stability of the parents' home environments and employment in our discussion of the child's home, school, and community record.

contentions, with citations to the authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(7). "Rule 28(a) 'does not simply require a party to mention authority; the authority must be used to develop the argument in a meaningful way.'" *Lewis v. State*, 295 So. 3d 521, 538 (¶55) (Miss. Ct. App. 2019) (quoting *Walker v. State*, 197 So. 3d 914, 919 (¶25) (Miss. Ct. App. 2016)).

¶13. While Patrice cites *Henderson v. Henderson*, 952 So. 2d 273 (Miss. Ct. App. 2006), this case does not stand for the proposition that consideration of the age and sex of the child is an overriding factor. In *Henderson*, the chancellor found that "all of the [*Albright*] factors other than the age, health and sex of the children and the continuity of care prior to the separation, favored neither parent." *Id.* at 278 (¶11). But "the previous three factors [(age, health, and sex of the children)] favored [the mother]." *Id.* On appeal, the father claimed that the chancellor's ruling was erroneous and "argue[d] that the age of the children is not the deciding factor for custody." *Id.* at (¶¶11, 13). This Court noted that the father "correctly state[d] that the best interest of the child [was] the most important concern in determining custody of the children." *Id.* at (¶13). Ultimately, this Court held that the chancellor analyzed the *Albright* factors and did not erroneously apply them in determining the best interests of the children. *Id.* It is clear that *Henderson* does not stand for the proposition that consideration of the age and sex of the child is an overriding factor.

¶14. Because Patrice's argument does not comply with Rule 28(a)(7), it is procedurally barred. Additionally, Patrice's characterization of the law is incorrect. "[T]he age and sex of a child are merely factors to be considered under *Albright* . . . ." *Sobieske v. Preslar*, 755

6

So. 2d 410, 413 (¶10) (Miss. 2000).

### b. Moral Fitness

¶15.    Next, Patrice claims that the chancellor erred by finding that the moral-fitness factor favored Titus. Specifically, she takes issue with the chancellor's reliance on the fact that she had "three children outside of marriage with three different men."

¶16.    In *Romans v. Fulgham*, 939 So. 2d 849 (Miss. Ct. App. 2006), the chancellor determined that the moral-fitness factor favored the father, "pointing to the fact that [the mother] had given birth to three children out of wedlock, all with different fathers" and that the father had "turned his life around significantly." *Id.* at 854 (¶15). This Court found that the chancellor's decision to award child custody to the father was supported by substantial credible evidence, and we affirmed the chancery court's ruling. *Id.* at (¶19). In this case, we likewise find that there was substantial evidence to support the chancellor's finding.

¶17.    Additionally, Patrice takes issue with the chancellor's finding that Titus placed "a greater emphasis" on the issue of attending church with A.L. At trial, Titus testified that he took A.L. to church with him on Sundays and Wednesdays. Similarly, Patrice testified that she took A.L. to church on Sundays. Titus, however, explained that his church attendance "built a lot of character in [him]" and kept him "in a space where [he] need[ed] to be," thus emphasizing the importance of taking A.L. to church. Patrice further asserts that Titus was "obsess[ed]" with his "cult like one family church." Titus acknowledged that the church's only members were members of his family and that A.L. was the only child who attended the church, but Titus's neighbor testified that she was not aware of anything "strange" about the

7

church. This Court has held that a chancellor may "consider a parent's involvement in the past and future religious and spiritual development of their children." *Davidson v. Coit*, 899 So. 2d 904, 912-13 (¶28) (Miss. Ct. App. 2005). After review, we find that there was substantial evidence to support the chancellor's findings.

### c. Home, School, and Community Record

¶18. Next, Patrice claims that the chancellor erred by finding that the home-school-and-community factor favored Titus.

¶19. In his opinion and final judgment, the chancellor found that Titus had shown "greater initiative" with A.L.'s education by helping A.L. with homework and meeting with her school's administration. The chancellor also recognized issues encountered by the Noxubee County School District, where A.L. would potentially attend school if she were in Patrice's custody. Additionally, the chancellor noted that Patrice was living with her parents in a three-bedroom house and that A.L.'s grandparents shared one bedroom, A.L.'s two brothers shared another bedroom, and A.L. shared a room with her sister and Patrice. However, A.L. had her own bedroom at Titus's house. As a result, the chancellor held that this factor favored Titus.

¶20. In her "Statement of the Issues," Patrice suggests that the chancellor also erred by finding that the stability of the parents' home environment and employment favored Titus. The chancellor found that this factor favored Titus "since he will maintain the marital home in which the child grew up." In the "Argument" section of her appellate brief, Patrice seemingly combines the chancellor's findings pertaining to this factor with his findings as

8

to the home-school-and-community factor. Patrice argues that the chancellor awarded the marital residence to Titus and then held it against her in the *Albright* analysis.

¶21. However, as previously discussed, our rules of appellate procedure require that the appellate brief "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." M.R.A.P. 28(a)(7). Because Patrice does not cite any authority in support of her argument, it is procedurally barred.

### d. Other Factors

¶22. Patrice claims that the chancellor did not give due consideration or any preference to keeping A.L. and her half-siblings together. In his final judgment, the chancellor noted that Patrice had other children besides A.L. and that she should receive a preference as a result. The chancellor stated:

> The [c]ourt notes this as a consideration and gives it the weight it is due but would also note that ultimately this consideration cannot overcome what the [c]ourt otherwise determines to be in the child's best interests. . . . [B]ased on the findings herein and particularly the parties['] living arrangements and [Titus's] heightened interests in religious and educational training, . . . [Titus] is hereby granted primary physical custody of . . . [A.L.].

¶23. This Court has held that "[t]he separation of siblings is not a separate *Albright* factor but one factor 'which the chancellor may consider along with the best interest of the child.'" *Moorman v. Moorman*, 28 So. 3d 670, 672 (¶7) (Miss. Ct. App. 2009). That is precisely what the chancellor did here.

¶24. Patrice cites *McWhirter v. McWhirter*, 811 So. 2d 397 (Miss. Ct. App. 2001), in support of her argument. In that case, the chancellor considered the child's relationship with

9

two half-siblings as one factor in determining the best interest of the child. *Id*. at 399 (¶¶7-8). Similarly, the chancellor in this case considered A.L.'s relationship with her half-siblings as one factor in determining her best interests.

¶25. Patrice also cites *Grames v. Grames*, 235 So. 3d 210 (Miss. Ct. App. 2017). In that case, however, "the chancellor noted that although separating siblings was not ideal, the best interest of the children would be for [two of the children] to live with [the father] and for [two of the children] to live with [the mother]." *Id*. at 213 (¶15). Likewise, the chancellor in this case determined that it would be in A.L.'s best interest for her to live with Titus.

¶26. Additionally, Patrice contends that the chancellor erred by failing to consider the half-siblings in creating a visitation schedule. At trial, however, Patrice indicated that A.L.'s half-siblings lived with her. Presumably, A.L. will see her half-siblings during Patrice's visitations. *See Moorman*, 28 So. 3d at 672 (¶9).

## II. Rule 8.05 Financial Disclosure

¶27. Finally, Patrice claims that the chancellor mistakenly found that she did not provide a Rule 8.05 financial disclosure to the court. The record suggests that Patrice's attorney handed a copy of the financial disclosure to the chancellor at trial, but it does not appear that Patrice's attorney offered the document into evidence. The list of exhibits offered during the trial reflects that only Titus's Rule 8.05 financial disclosure was admitted into evidence for the chancellor's consideration.

¶28. Furthermore, the chancellor noted the lack of a financial disclosure from Patrice when deciding the issues of child support and division of the marital estate. In her appellate brief,

10

however, Patrice does not take issue with the court's decision as to either issue. Nor does she explain how her financial disclosure would have changed the chancellor's decision. Therefore, we cannot say that the chancellor's judgment in this case was erroneous.

¶29. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**