FAIR, J.,
for the Court:
¶ 1. This appeal arises from a chancellor’s grant of a petition to modify custody. On August 27, 2012, the chancellor modified the judgment of divorce between James Hall and Dana Hall to reflect that James would be granted custody of their two minor children. Aggrieved, Dana raises the following issues on appeal: (1) James failed to present sufficient evidence to sustain the “material-change-of-eircum-stances” test as provided in McDonald -v. McDonald, 39 So.3d 868 (Miss.2010), and (2) the chancellor erred in his analysis by placing “undue weight” on Dana’s moral fitness. Finding that the chancery court committed no manifest error, we affirm.
FACTS
¶ 2. James and Dana Hall married on November 7, 1998, in Lincoln County. During their marriage, they had two ehil-dren — John, born in 2000, and Sarah, born in 2004.[1] They divorced on March 23, 2006, citing irreconcilable differences. As part of the divorce and property settlement, they agreed to share joint legal custody of the children, with Dana having primary physical custody subject to reasonable visitation for James. James also was required to pay child support each month and maintain a major medical health and hospitalization insurance policy on both children.
¶ 3. On May 14, 2010, James filed a petition for modification in Lincoln County Chancery Court, claiming that one or more substantial changes had occurred since the entry of the prior judgments. On March 18, 2011, an agreed temporary order was entered, granting both parties unrestricted access to the educational and medical records of both children. Thereafter, the parties entered an agreed order setting a trial date for August 8, 2012, for the petition.
¶ 4. In his petition, James listed eight material changes that, he claimed, adversely affected the children: poor dental care rising to the level of neglect, improper care related to a dog bite received by John, Dana’s cohabitation with a romantic partner, Dana’s abuse of alcohol, educational neglect, the children’s tattered clothes and poor hygiene, Dana’s use of tobacco, and Dana’s failure to meet the children’s spiritual needs.
¶ 5. At trial, the chancellor heard testimony from James; James’s wife, Keesha Hall; Dana; Dana’s mother, Brenda; and Dana’s sister, Deanna. Ultimately, the chancellor found that there had been a material change in circumstances adverse to both children’s best interests. The chancellor went through each of the fac *825 tors set forth in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). After weighing the Albright factors to determine which parent was more suitable to maintain primary custody of both children, the chancellor awarded James primary custody. Dana was given visitation rights and ordered to pay a monthly child support sum of $500. Additional facts pertaining to the trial will be discussed in the analysis, as necessary.
¶ 6. Dana now appeals, arguing that the chancellor erred when he found that there had been a material change in circumstances adverse to the children’s best interests. Dana also claims the chancellor placed “undue weight” on her moral fitness during his analysis under the Albright factors.
STANDARD OF REVIEW
¶ 7. The standard of review in domestic-relations cases is limited. Arrington v. Arrington, 80 So.3d 160, 164 (¶ 11) (Miss.Ct.App.2012) (citing In re Dissolution of Marriage of Wood, 35 So.3d 507, 512 (¶ 8) (Miss.2010)). This Court will not reverse a chancellor’s findings concerning modification of custody unless the chancellor was manifestly wrong or clearly erroneous, or applied an improper legal standard. In re E.C.P., 918 So.2d 809, 822 (¶ 58) (Miss.Ct.App.2005) (citing Hensarling v. Hensarling, 824 So.2d 583, 587 (¶ 8) (Miss.2002)).
¶ 8. In appeals from child-custody decisions, our polestar consideration, like the chancellor’s, must be the best interest of the child. Montgomery v. Montgomery, 20 So.3d 39, 42 (¶ 9) (Miss.Ct.App. 2009) (quoting Hensarling, 824 So.2d at 587 (¶ 8)). “So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor’s decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor.” Hammers v. Hammers, 890 So.2d 944, 950 (¶14) (Miss.Ct.App.2004) (quoting Bower v. Bower, 758 So.2d 405, 412 (¶ 33) (Miss.2000)).
DISCUSSION
¶ 9. The burden of proof is on the movant to show by a preponderance of the evidence that a material change in circumstances has occurred in the custodial home. Riley v. Doemer, 677 So.2d 740, 743 (Miss.1996). To successfully move to modify custody of a child, a noncustodial parent must prove (1) that a substantial change in circumstances has transpired since issuance of the custody decree, (2) that this change adversely affects the child’s welfare, and (3) that the child’s best interests mandate a change of custody. McDonald, 39 So.3d at 880 (¶ 37). “A modification of custody is warranted in the event that the moving parent successfully shows that an application of the Albright factors reveals that there had been a material change in those circumstances which has an adverse effect on the child and modification of custody would be in the child’s best interest.” Johnson v. Gray, 859 So.2d 1006,1013 (¶ 33) (Miss.2003) (citing Sanford v. Arinder, 800 So.2d 1267, 1272 (Miss.Ct.App.2001)).
1. Material-Change Analysis
¶ 10. “The chancellor must consider the totality of the circumstances to determine ‘whether there was a material change in circumstances.’ ” Cantin v. Cantin, 78 So.3d 943, 948 (¶ 15) (Miss.Ct. App.2012) (citation and quotation omitted). If, after examining the totality of the circumstances, a material change in circumstances is found to have occurred, the chancellor “must separately and affirmatively determine that this change is one which adversely affects the children.” *826 Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997) (citation omitted).
¶ 11. Dana first argues that the chancellor erred in finding a material change in circumstances adversely affecting the children based on “uncorroborated testimony, supposition^] and lack of credible evidence .... ” Our supreme court has held that the chancellor has the sole responsibility to determine the credibility of witnesses and evidence, and the weight to be given each. Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994). We therefore give due deference to the chancellor’s credibility determinations. Ivy v. Ivy, 863 So.2d 1010, 1013 (¶ 10) (Miss.Ct.App.2004).
¶ 12. Before determining whether to modify custody, the chancellor discussed all seven material changes listed in James’s petition. In his discussion he determined that two of the changes constituted a material change in circumstances adversely affecting the children: (1) poor dental care for Sarah, and (2) John’s dog bite. In his analysis, the chancellor relied on photographs admitted into evidence that showed Sarah’s teeth were black and decayed as early as December 2011. Kee-sha also testified that Sarah’s teeth were rotten and black. James testified that he provided dental insurance for the children, but they were not receiving adequate dental care. Dana testified that the teeth shown in the photographs appeared neglected. Regarding the dog bite, there was undisputed testimony that John was bitten by a Great Dane on or around September 11, 2011. Dana testified to the following: the dog belonged to her friend, she immediately put hydrogen peroxide on the wound, she did not treat the wound with an antibiotic, she did not take John to the doctor, and she did not tell James about the incident. In his judgment, the chancellor stated that, “[w]ithout a doubt, accidents happen, but failure to notify the other parent of a significant dog bite, and failure to have the bite evaluated by a medical professional are material changes in circumstances that adversely affect the child.”
¶ 13. Viewing the totality of the circumstances, and giving the findings of the chancellor due deference, we cannot say that he erred by finding that a substantial and material change in circumstances had occurred since the time of the original custody decree. Therefore, we will not disturb this decision on appeal. See Wilson v. Wilson, 79 So.3d 551, 560 (¶37) (Miss.Ct.App.2012).
¶ 14. Dana also argues that the judge erred in considering her cohabitation with a same-sex partner to be a material change in circumstances. Dana bases her argument on the claim that James was allegedly aware of her sexual preference prior to the divorce.
II15. Contrary to Dana’s claim, the chancellor did not include her sexual preference in his recitation of the reasons for a change in custody. The chancellor did, however, recognize that Dana cohabited with others beginning at some point after the divorce and was, in fact, in such a relationship at the time of trial. Dana testified that she lived with her current romantic partner in the presence of her children. She also testified that she has had three romantic relationships since the divorce and that the last two partners had authorization to pick up the children from school. In his judgment, the chancellor stated that there are no facts in the record to support that Dana’s cohabitation with a romantic partner had an adverse effect on the children. The chancellor also stated that the existence of an extramarital relationship, by itself, fails to provide a sufficient basis for a finding of an adverse material change. See Sullivan v. Stringer, 736 So.2d 514, 517 (¶ 16) (Miss.Ct.App. *827 1999) (finding that cohabitation alone fails to give rise to a material change in circumstances). However, the existence of the relationship coupled with another adverse impact on the child provides a sufficient basis to warrant a custody modification. Id. at 518 (¶ 20). The chancellor did not err in considering this issue in his material-change analysis.
¶ 16. Dana next argues that the chancellor erroneously applied the test used in Riley to find a material change in circumstances. Riley, 677 So.2d at 744 (holding that “where a child living in a custodial environment clearly adverse to the child’s best interest ] somehow appears to remain unscarred by his or her surroundings, the chancellor is not precluded from removing the child for placement in a healthier environment”). The chancellor found that, based on the totality of circumstances, there had been a material change in circumstances adversely affecting the children. The chancellor did state that, while the children had not yet experienced “intense” adverse effects, their living conditions created a strong likelihood they would be damaged. See id. However, the chancellor’s reference to Riley did not serve as a substitute for his analysis under McDonald to determine a material change in circumstances. Dana’s argument that the chancellor incorrectly assessed the circumstances under Riley is of no merit.
2. Albright Analysis
¶ 17. “If the court finds an adverse material change, then the next step is to apply the Albright factors to determine whether modification is in the child’s best interest.” White v. White, 26 So.3d 342, 351 (¶ 28) (Miss.2010) (citing Sturgis v. Sturgis, 792 So.2d 1020, 1025 (¶ 18) (Miss.Ct.App.2001)). The Albright factors are as follows: (1) age, health, and sex of the child; (2) a determination of the parent who had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which parent has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of parent and child; (7) the moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Albright, 437 So.2d at 1005.
¶ 18. Dana now argues that the chancellor placed “undue weight” on her moral fitness in his Albright analysis. During his discussion, the chancellor found that the factor favored James:
Dana has had three relationships since the divorce from James, and currently is living with a romantic partner, in the presence of the children. Dana has also admitted her failure to meet the spiritual development needs of the children. Dana has had two DUI’s .... There is no evidence of moral issues that relate to James.
¶ 19. An Albright analysis is not a mathematical equation. Lee v. Lee, 798 So.2d 1284, 1288 (¶ 15) (Miss.2001). Further, the “factors are not meant to be weighed equally in every case.” Id. (citing Divers v. Divers, 856 So.2d 370, 376 (¶ 27) (Miss.Ct.App.2003)). Our supreme court has held that “[a]ll the [Albright] factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way he sees fit.” Johnson, 859 So.2d at 1013-14 (¶ 36).
¶ 20. According to the chancellor, the following factors favored awarding custody of John and Sarah to James: the health *828 and sex of the children; and moral fitness: The continuity of care and employment responsibilities weighed in favor of Dana. The chancellor found that the following factors favored neither party: age of the children, parenting skills, willingness and capacity to provide primary care, physical and mental health and age of the parents, the children’s preference, and stability of the home environment and employment. The chancellor ultimately found that the best interest of the children would be served by granting physical custody to James. Therefore, he granted the modification in James’s favor.
¶ 21. “In order to determine whether or not the chancellor was manifestly wrong, clearly erroneous or abused his discretion in applying the Albright factors, we review the evidence and testimony presented at trial under each factor to ensure his ruling was supported by the record.” Hollon v. Hollon, 784 So.2d 943, 947 (¶ 13) (Miss.2001). Further, this Court cannot reweigh the evidence and must defer to the chancellor’s findings of the facts, so long as they are supported by substantial evidence. Carter v. Carter, 735 So.2d 1109, 1114 (¶ 18) (Miss.Ct.App.1999). After careful review of the record, we cannot say the chancellor’s decision to award custody to James was manifestly wrong or clearly erroneous. Accordingly, this argument is without merit.
CONCLUSION
¶ 22. The chancellor’s decision to modify custody from Dana to James is based upon substantial evidence. Therefore, the judgment of the chancery court is affirmed.
¶ 23. THE JUDGMENT OF THE LINCOLN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.

. The names of the children have been changed in the opinion for confidentiality reasons.