# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01242-COA

LAUREN ROBERTS                                                        APPELLANT

v.

TYLER EADS                                                            APPELLEE

DATE OF JUDGMENT:            07/19/2016
TRIAL JUDGE:                 HON. M. RONALD DOLEAC
COURT FROM WHICH APPEALED:   FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      GAY L. POLK-PAYTON
ATTORNEY FOR APPELLEE:       BARBARA BOND PARKER
NATURE OF THE CASE:          CIVIL - CUSTODY
DISPOSITION:                 AFFIRMED - 10/10/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.

### CARLTON, J., FOR THE COURT:

¶1.     The Forrest County Chancery Court awarded Lauren Roberts and Tyler Eads joint legal and physical custody of their eight-year-old son, Thomas.[1]   In appealing the chancellor's denial of her request for primary physical custody, Lauren asserts that the chancellor (1) erred in his application of the *Albright*[2] factors and (2) misapplied Mississippi statutory law and caselaw.  Finding no error, we affirm.

### FACTS

---

[1] To protect the privacy of the parties' minor son, we use a pseudonym in place of his actual name.

[2] *See Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

¶2.     Tyler and Lauren cohabited in 2008. Following their son's birth in 2009, the parties ended their relationship and eventually married other people. Tyler married Jenny Eads around December 2009, and the couple later had two children together. Lauren married Harry Martinolich in May 2012, and they had one child together. Lauren and Harry later divorced, and in May 2015, Lauren married Daniel Roberts. At the time of the hearing on this matter, Lauren and Daniel were expecting a child.

¶3.     On May 22, 2015, Lauren filed a petition seeking sole legal and physical custody of Thomas. On June 29, 2015, Tyler filed a response, a counterclaim for custody, and a motion for temporary relief. The same day the chancellor entered a temporary order awarding Lauren temporary legal and physical custody of Thomas and granting Tyler visitation rights. The chancellor also appointed a guardian ad litem (GAL) for Thomas.

¶4.     On March 1, 2016, the GAL submitted her initial report. The GAL found that Lauren, age twenty-six, worked as a nurse with the Hattiesburg School District. The GAL further found that Tyler, age twenty-seven, had worked for numerous companies as a truck driver and was currently employed by Ross Trucking. The GAL found no concerns with the parties' spouses and determined that both spouses were involved in Thomas's life and cared for him very much. Although Thomas enjoyed spending time with his father, stepmother, and half-brothers, the GAL found that he had lived his entire life with his mother. As a result, the GAL concluded that Thomas was closer to Lauren and was more comfortable in a living environment with her.

¶5.     Taking into consideration the *Albright* factors, the GAL found the following factors

favored Lauren: (1) continuity of care; (2) employment and responsibilities of that employment; (3) emotional ties with the child; (4) stability of the home environment; and (5) stability of employment. Due to Thomas's age, the GAL deemed inapplicable the factor regarding his preference.[3] She further concluded that all the remaining *Albright* factors were neutral. Based on her findings, the GAL initially recommended that Lauren retain primary physical custody of Thomas, Tyler receive standard visitation rights, and the parties share legal custody. At the end of her initial report, the GAL wrote that she reserved the right to change her opinion based upon pending testimony and the receipt of additional information.

¶6. After filing her original report, the GAL followed up with the parties and reviewed Thomas's school records. In addition, the GAL interviewed Tyler's parents (Thomas's paternal grandparents) and the paternal grandmother of Lauren's son from her marriage with Harry. The additional information gathered by the GAL led her to change her custody recommendation. As a result, the GAL submitted a supplemental report on June 17, 2016.

¶7. In her supplemental report, the GAL explained that she originally recommended Lauren retain primary physical custody of Thomas because she believed Lauren had continuity of care and that neither Tyler nor his parents were active in Thomas's life. However, the GAL stated she had received new information that showed both Tyler and his parents had actively participated in Thomas's life prior to the custody filing but that Lauren had not allowed them to see Thomas since she filed for sole custody. In addition, the GAL reported that Tyler had initially refrained from refuting Lauren's allegations or speaking

---

[3] *See Mixon v. Sharp*, 853 So. 2d 834, 840 (¶29) (Miss. Ct. App. 2003) (recognizing that a child under age twelve is too young to have his preference considered).

3

negatively about her because he was afraid Lauren "would continue to withhold [Thomas] from his life." The GAL found that Lauren had twice previously withheld visitation from Tyler, with each occasion lasting from several weeks to several months. After taking into account the additional information she had received, the GAL recommended that Lauren and Tyler share legal and physical custody of Thomas.

¶8. On June 28, 2016, the chancellor held a hearing on the parties' custody dispute. On July 19, 2016, the chancellor entered his final judgment. In applying the *Albright* factors, the chancellor agreed with the GAL's analysis that the following factors were neutral: (1) Thomas's age, health, and sex; (2) the parties' parenting skills; (3) the parents' willingness and capacity to provide primary child care; (4) the parents' age, physical health, and mental health; (5) Thomas's home, school, and community record; and (6) the parents' relative financial situations. Although noting the GAL's initial conclusion that consideration of the parents' emotional ties favored Lauren, the chancellor determined this factor was also neutral.

¶9. As to the remaining factors, the chancellor agreed with the GAL that Thomas's preference was inapplicable due to his age. Furthermore, the chancellor agreed with the GAL that the following three factors weighed in Lauren's favor: (1) continuity of care prior to the parties' separation; (2) the parents' employment and the responsibilities of their employment; and (3) the stability of the parents' employment. However, unlike the conclusion reached by the GAL's initial report, the chancellor found that three factors also weighed in Tyler's favor. These factors included: (1) the parents' moral fitness; (2) the

4

stability of the parents' home environments; and (3) the differences in the parents' religion, personal values, and lifestyles.

¶10.    After determining that Tyler and Lauren both had three *Albright* factors weighing in their favor, the chancellor concluded that joint legal and physical custody would be in Thomas's best interest.  Aggrieved by the chancellor's judgment, Lauren appeals.

## STANDARD OF REVIEW

¶11.    "This Court's standard of review in domestic[-]relations matters is extremely limited." *Phillips v. Phillips*, 45 So. 3d 684, 692 (¶23) (Miss. Ct. App. 2010).  Appellate courts cannot "reevaluate the evidence, retest the credibility of witnesses, nor otherwise act as a second factfinder." *Bower v. Bower*, 758 So. 2d 405, 412 (¶31) (Miss. 2000) (citing *Wright v. Stanley*, 700 So. 2d 274, 280 (Miss. 1997)).  We will not disturb a chancellor's findings of fact unless the findings were manifestly wrong or clearly erroneous or unless the chancellor applied an erroneous legal standard. *Phillips*, 45 So. 3d at 692 (¶23).  Furthermore, we will not reverse the chancellor's decision where substantial record evidence supports his factual findings. *Id.*  However, we review questions of law de novo. *Smith v. Wilson*, 90 So. 3d 51, 56 (¶13) (Miss. 2012).

## DISCUSSION

### I.    Application of the *Albright* Factors

¶12.    "The best interest of the child is paramount in any child-custody case." *Smith v. Smith*, 97 So. 3d 43, 46 (¶8) (Miss. 2012).  In determining a child's best interest, the chancellor considers the following factors:  (1) the child's age, health, and sex; (2) the parent

5

with the continuity of care prior to the separation; (3) the parent with the best parenting skills and the willingness and capacity to provide primary child care; (4) the parents' employment and the responsibilities of that employment; (5) the parents' physical and mental health and age; (6) the emotional ties of the parent and child; (7) the parents' moral fitness; (8) the child's home, school, and community record; (9) the child's preference at the age sufficient to express a preference by law; (10) the stability of the parents' home environments and employment; and (11) other factors relevant to the parent-child relationship. *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

¶13. "An *Albright* analysis is not a mathematical equation." *Hall v. Hall*, 134 So. 3d 822, 827 (¶19) (Miss. Ct. App. 2014). "[T]his Court cannot reweigh the evidence and must defer to the chancellor's [factual] findings . . . so long as they are supported by substantial evidence." *Id.* at 828 (¶21). The Mississippi Supreme Court "has held that 'all the *Albright* factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way he sees fit.'" *Id.* at 827 (¶19) (quoting *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003)).

¶14. In challenging the chancellor's award of joint physical custody of the parties' son, Lauren argues that the chancellor misapplied several *Albright* factors. Specifically, she contends the chancellor erroneously found that Thomas's age, health, and sex; the parents' relative financial situations; and the parents' emotional ties with Thomas were all neutral factors. Lauren further asserts the chancellor erred by finding that consideration of the parties' moral fitness and the stability of their home environments weighed in Tyler's favor.

6

### a.     Thomas's Age, Health, and Sex

¶15.   The chancellor found that, at the time of the hearing, Thomas was a seven-year-old boy who received speech therapy and had been diagnosed with ADHD.  The chancellor also noted that concerns had been raised that Thomas might have dyslexia.  While finding that Tyler had been less involved than Lauren in Thomas's ADHD evaluation and treatment, the chancellor determined this was due to Lauren's failure to inform Tyler about Thomas's medical issues.  The GAL's supplemental report reached the same conclusion.  The chancellor further noted the GAL's findings that, while Tyler felt alienated due to the lack of information and wished to be kept up to date, he had no problem with Thomas receiving continued treatment for his diagnosis.  Based on the information before him, the chancellor agreed with the GAL's finding that this factor was neutral.  Upon review, we find nothing in the record to contradict the chancellor's determination that this factor favored neither parent.  *See Hall*, 134 So. 3d at 828 (¶21).

### b.     The Parents' Relative Financial Situations

¶16.   Although not actually listed as an *Albright* factor, the chancellor included a discussion of the parties' relative financial situations and found that this "factor" was neutral.  In so finding, the chancellor determined that Tyler's income had remained almost the same at his last two jobs and that  Lauren had been employed at her current position for about a year and a half.  The chancellor also noted Tyler's testimony that he was considering returning to school to receive training as a lineman or electrician.  Finally, the chancellor concluded that both parties' expenses exceeded their incomes.  Based on this evidence, the chancellor found

7

that consideration of the parties' relative financial situations favored neither party. After reviewing the record, we conclude that substantial evidence supports the chancellor's finding on this issue. *See id.*

### c. The Emotional Ties of the Parents and Child

¶17. In discussing this factor, the chancellor acknowledged that the GAL's initial report concluded this factor favored Lauren. According to the GAL's testimony, however, her supplemental findings revealed that both Tyler and his parents were more involved in Thomas's life than she initially believed. Furthermore, the evidence showed, and the GAL found, that Thomas enjoyed spending time at his father's home with his stepmother and his half-brothers.

¶18. After considering the testimony and evidence presented, the chancellor found that both parties loved their son very much and were emotionally connected to him.[4] As a result, the chancellor concluded this factor was neutral. Because the record contains substantial evidence to support the chancellor's finding, we find no error. *See id.*

### d. The Parents' Moral Fitness

¶19. With regard to the parents' moral fitness, the chancellor noted that Tyler had been in a stable marriage for the last six years that had produced two children. The chancellor further noted that Lauren began cohabiting with her first husband, Harry, two months after meeting him and had begun dating and living with her current husband, Daniel, while still married

---

[4] *See Sumrall v. Sumrall*, 970 So. 2d 254, 258 (¶19) (Miss. Ct. App. 2007) (finding no error in the chancellor's factual determination that the emotional ties between the parents and child constituted a neutral factor since both parents loved their child and the child loved his parents).

to, but separated from, Harry. At the time of the hearing, Lauren and Daniel were expecting a child.

¶20. Although the GAL found the parties' moral fitness neutral, the chancellor concluded that the factor weighed in Tyler's favor "in view of Lauren's promiscuous behavior with Daniel while still married to Harry." *See Brumfield v. Brumfield*, 49 So. 3d 138, 149 (¶¶43-44) (Miss. Ct. App. 2010) (finding no error in the chancellor's consideration of the wife's adulteries, as well as other circumstances, and her determination that the moral-fitness factor favored the husband). On appeal, Lauren argues the chancellor "erred by holding [her] past against her in determining her moral fitness and awarding [the parties] joint physical custody of the[ir] minor child." Despite Lauren's assertions, however, the record fails to show that the chancellor placed undue emphasis on Lauren's marital and extramarital relationships. Instead, the record reflects that the chancellor conducted an appropriate *Albright* analysis and considered all the relevant factors applicable to the case in reaching his determination. *See Bruenderman v. Bruenderman*, 220 So. 3d 204, 208 (¶13) (Miss. Ct. App. 2017) (finding no error in the chancellor's *Albright* analysis where the chancellor discussed but did not overemphasize the husband's adultery). We therefore find no error with respect to the chancellor's findings on this factor. *See Hall*, 134 So. 3d at 828 (¶21).

e. **The Stability of the Parents' Home Environments**

¶21. As to the stability of the parents' home environments, the chancellor again observed that Tyler had been in a stable marriage for over six years while Lauren had been in multiple relationships and marriages. The chancellor also found that Tyler appeared to have more

family to support him than Lauren did. As the GAL's supplemental report noted, Tyler's parents were much more involved in Thomas's life than she initially believed. The chancellor therefore disagreed with the GAL's finding that this factor favored Lauren, and he instead concluded that the factor weighed in Tyler's favor.[5] Because substantial evidence supports the chancellor's determination, we find no error. *See id.*

## II. Application of Mississippi Statutory Law and Caselaw

¶22. In addition to challenging the chancellor's application of the *Albright* factors, Lauren claims that the chancellor's award of joint physical custody violates *Easley v. Easley*, 91 So. 3d 639 (Miss. Ct. App. 2012), and Mississippi Code Annotated section 93-5-24(2) (Rev. 2013).

¶23. In *Easley*, the chancellor granted the parties an irreconcilable-differences divorce. *Easley*, 91 So. 3d at 640 (¶1). Section 93-5-24(2) provides that joint custody may be awarded in an irreconcilable-differences divorce "in the discretion of the court, upon application of both parents." Following a trial in *Easley*, "the chancellor determined that joint physical custody was in the children's best interest, but he erroneously concluded that the statute did not allow it to be awarded unless both parties expressly presented joint custody for consideration." *Easley*, 91 So. 3d at 640 (¶1). The chancellor therefore awarded sole custody of the parties' children to the father while granting the mother visitation. *Id.* On appeal, this Court concluded that, "after finding joint custody to be in the children's best

---

[5] *Compare In re N.B.*, 135 So. 3d 220, 228 (¶35) (Miss. Ct. App. 2014) (recognizing a chancellor's authority to reject the findings of a statutorily required GAL but providing that the chancellor's reasons for doing so must be stated in his factual findings and legal conclusions).

interest, the chancellor's award of custody to one parent was an error of law." *Id.* at (¶2). We therefore reversed the chancellor's judgment and remanded the case so the chancellor could apply the proper legal standard. *Id.*

¶24.    Upon review of the present case, we find no merit to Lauren's claim that the chancellor's award of joint physical custody violated either section 93-5-24(2) or our holding in *Easley*. As stated, section 93-5-24(2) provides a chancellor with the discretion to grant joint custody in an irreconcilable-differences divorce. However, the present case involves no such divorce since the parties were never married. We further note that section 93-5-24(3) provides a chancellor with the discretion to award joint custody "[i]n other cases . . . upon application of one or both parents." As the record here reflects, in responding to Lauren's custody petition, Tyler requested sole custody or, in the alternative, joint custody. Furthermore, after considering the *Albright* factors, the chancellor determined that joint legal and physical custody served Thomas's best interest.[6] As *Easley* recognized, a chancellor may grant joint custody, even where both parties do not present the issue, if such an arrangement is in the child's best interest. *See Easley*, 91 So. 3d at 640 (¶1). We therefore find no merit to Lauren's assertion that the chancellor's judgment violated Mississippi statutory law and caselaw.

¶25.    The chancellor's judgment is affirmed.

---

[6] *See also Smith v. Smith*, 206 So. 3d 502, 514 (¶33) (Miss. 2016) (discussing a chancellor's duty to weigh conflicting testimony and determine witness credibility); *Reed v. Weathers Refrigeration & Air Conditioning Inc.*, 759 So. 2d 521, 524 (¶10) (Miss. Ct. App. 2000) ("Even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong." (quoting *Richardson v. Riley*, 355 So. 2d 667, 668 (Miss. 1978))).

¶26.   **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**