# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01339-COA

**ZACHARY DAKOTA WEBER**                                                      **APPELLANT**

**v.**

**KRYSTAL BRYANT WEBER**                                                        **APPELLEE**

DATE OF JUDGMENT:                07/07/2016
TRIAL JUDGE:                          HON. DEBORAH J. GAMBRELL
COURT FROM WHICH APPEALED:   FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       PHILLIP LLOYD LONDEREE
ATTORNEY FOR APPELLEE:        HARRY RAY LANE
NATURE OF THE CASE:            CIVIL - CUSTODY
DISPOSITION:                  AFFIRMED - 11/07/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., WILSON AND WESTBROOKS, JJ.

### LEE, C.J., FOR THE COURT:

¶1.     This appeal concerns a custody dispute where the chancellor awarded the mother physical custody of the minor child. The father now appeals, arguing that the chancellor erred. Finding no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     Zachary Dakota Weber (Dakota) and Krystal Bryant Weber had a son together in December 2011. At the time of their son's birth, Dakota was eighteen years old and Krystal was seventeen years old, so they lived with Dakota's mother and stepfather in Petal, Mississippi. Dakota and Krystal married in April 2014, but separated approximately eight months later. On December 17, 2015, Dakota filed a complaint for divorce in the Forrest

County Chancery Court, alleging several fault grounds and requesting custody of the couple's minor child. Ultimately, the parties withdrew their fault grounds and agreed to an irreconcilable-differences divorce. They entered into a property-settlement agreement, reserving the issues of custody, visitation, and child support for the chancellor's consideration.

¶3. After a trial, the chancellor conducted an *Albright*[1] analysis and awarded Krystal physical custody of the minor child, with both parties to have legal custody. The chancellor ordered Dakota to pay $300 per month in child support and set a visitation schedule.

¶4. In his appeal, Dakota argues that the chancellor erred in applying the *Albright* factors and in failing to award the parties joint custody.

## STANDARD OF REVIEW

¶5. This Court's standard of review regarding child custody is a limited one. *C.W.L. v. R.A.*, 919 So. 2d 267, 270 (¶8) (Miss. Ct. App. 2005). This Court will not disturb a chancellor's findings "unless manifestly wrong or clearly erroneous." *Sanderson v. Sanderson*, 824 So. 2d 623, 625 (¶8) (Miss. 2002). However, "[a] chancellor's conclusions of law are reviewed de novo." *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009).

## DISCUSSION

### I. *Albright* Factors

¶6. In his first issue on appeal, Dakota argues that the chancellor erred in applying the *Albright* factors. The factors used to determine what is in the best interest of a child with

---

[1] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

regard to custody are: (1) the age, health, and sex of the child; (2) a determination of the parent who has had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary childcare; (4) the employment of the parents and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of the parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983). "An *Albright* analysis is not a mathematical equation." *Hall v. Hall*, 134 So. 3d 822, 827 (¶19) (Miss. Ct. App. 2014) (citation omitted). "[T]his Court cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *Id*. at 828 (¶21).

¶7.    Here, the chancellor found that seven factors were neutral, three factors (two, three, and seven) favored Krystal, and one factor was not applicable due to the child's age. The chancellor addressed factor three—which parent has the best parenting skills and which has the willingness and capacity to provide primary childcare—as two separate factors, finding that Krystal had better parenting skills but both parents had the willingness and capacity to provide primary childcare. On appeal, Dakota questions the chancellor's ruling on the following factors that he believes weigh in his favor: continuity of care, parenting skills, the willingness and capacity to provide primary childcare, and the stability of the home

environment.

### A. Continuity of Care Prior to the Separation

¶8.     In regard to this factor, the chancellor noted that Krystal was the primary caregiver prior to the separation. Dakota argues that he spent more time with the minor child after the separation; thus, he was the primary caregiver. However, this factor focuses on the time period prior to the separation. Here, Dakota admitted during trial that due to his work schedule, Krystal was the primary caregiver prior to their separation. We cannot find the chancellor erred in finding this factor favored Krystal.

### B. Parenting Skills

¶9.     The chancellor found this factor favored Krystal, mostly because Krystal had been the child's primary caregiver prior to the separation. Dakota contends that he offered more proof of his parenting skills; thus, this factor should favor him. However, evaluating the credibility of witnesses is the chancellor's responsibility. *See Butler v. Butler*, 218 So. 3d 759, 762 (¶9) (Miss. Ct. App. 2017). The chancellor determined that Krystal's testimony was more credible in this instance. We cannot find the chancellor erred in finding this factor favored Krystal.

### C. Willingness and Capacity

¶10.     Although this factor is technically part of the "parenting skills" factor, the chancellor found that this factor was neutral based upon the parties' testimony that both were willing to provide care. The chancellor noted that both Krystal and Dakota had a family support system to provide help when needed.

4

¶11. Dakota argues that Krystal's decision not to keep the child for her full visitation shows an unwillingness to provide primary childcare. Dakota introduced selected text messages between Krystal and himself as proof. After the parties separated, they agreed to alternate weekly visits beginning and ending on Sunday. Krystal admitted that she sent the minor child early to his visitation with Dakota on several occasions. The evidence showed that on some of these occasions, Krystal was sick, was working late, or did not have reliable transportation or childcare. Krystal testified that if their son wanted to begin his weekly visitation with Dakota earlier than Sunday, then she would let him. We cannot find that the chancellor erred in finding this factor was neutral.

### D. Stability of the Home Environment

¶12. The chancellor found this factor neutral, noting that both parties lived with their parents and both parties relied on their parents to provide help with their son. Dakota contends that he has lived with his mother and stepfather since his separation, while Krystal has lived several places since the separation. As a result, Dakota claims his home environment is more stable. The chancellor did recognize that after the parties separated, Krystal lived in three separate locations for short periods before moving in with her mother and stepfather. Although this was discussed elsewhere in the chancellor's opinion, the chancellor was concerned that Dakota's girlfriend had lived with him in his mother's house for over one year, moving out prior to the trial. The minor child slept in a bed next to the bed Dakota and his girlfriend shared. We cannot find that the chancellor erred in finding this factor was neutral.

¶13. In conclusion, it is the chancellor's duty to weigh the evidence, and she is in a better position than this Court to judge the veracity of witnesses and credibility of evidence. The chancellor made on-the-record findings as to every *Albright* factor, and there is no evidence that her decision was manifestly in error or based on an erroneous legal standard. Therefore, we affirm as to this issue.

## II. Joint Custody

¶14. Dakota argues that the chancellor should have awarded the parties joint physical custody. In her opinion and judgment, the chancellor, citing *Easley v. Easley*, 91 So. 3d 639 (Miss. Ct. App. 2012), noted that she could consider joint physical custody whether or not either party requested it. Here, neither party requested joint physical custody. In *Easley*, the chancellor was under the mistaken impression that he could only award joint physical custody if both parties requested it in an irreconcilable-differences divorce. *Id.* at 640 (¶4). This Court found otherwise and reversed for the chancellor to apply the correct legal standard. *Id.* at (¶2). In this case, the chancellor determined that "joint physical custody would not promote the best interests of the child in this case based upon a preponderance of the evidence." The chancellor noted her concerns about Dakota and his girlfriend's living arrangements prior to trial and Dakota's lack of financial support for his son during the separation. We have reviewed the record, and we find no abuse of the chancellor's discretion in declining to award joint physical custody.

¶15. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. TINDELL, J., NOT PARTICIPATING.**